[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried at Westport, Connecticut on December 13, 1982. The plaintiff has resided continuously in Connecticut for approximately thirty years. The parties have no children issue of the marriage. The evidence clearly established that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
This is a second marriage for both parties. Each has children from a prior marriage. The plaintiff, age 48, has worked during the marriage and is currently employed in New York City as a sales person for a business known as RC Communications.
The defendant, age 60, is presently unemployed. He was gainfully employed in the advertising field during most of the marriage. He helped to contribute to the support and education of the plaintiff's two children who resided with the parties for a number of years.
The parties disagree as to the cause of the breakdown of their marriage. The court finds each must bear some responsibility for the failure of the relationship.
The court has considered the criteria set forth in Connecticut General Statutes §§ 46b-62, 46b-81 and 46b-82 in reaching the CT Page 4789 decisions reflected in the orders that follow.
The following orders may enter.
(1) No periodic alimony is awarded to either party.
(2) The marital home at 15 Newtown Turnpike, Westport, Connecticut shall be immediately listed for sale. From the gross proceeds the following obligations shall be paid:
a. Real estate broker's fees';
b. closing costs, including attorney's fees and conveyance taxes;
c. the first mortgage to People's Bank;
d. the note due to Dulce DeCastro in the amount of $35,000;
e. the balances due on the following debts:
 1. Mellon Bank credit card $ 3,500.00 2. USAA credit card 2,000.00 3. Wells Fargo credit 2,400.00 4. Chase credit line 2,300.00 5. Dr. G. Lavarca 1,290.00 ---------- $11,490.00
The net proceeds (balance remaining after payment of obligations listed above), shall be paid sixty percent (60%) to the plaintiff and forty percent (40%) to the defendant.
The plaintiff shall have right of first refusal to buy the marital property upon such terms and conditions as both parties would accept from a bona fide buyer. The net proceeds shall be determined as if the property were sold to a third party, and the plaintiff shall pay to the defendant forty percent (40%) of the net proceeds.
3. The court retains jurisdiction over the terms and conditions of the sale of the home, and in the event the parties cannot agree on a listing broker, listing price or sales price, the court will make said determinations. The parties shall cooperate with the broker for the purpose of showing and selling the CT Page 4790 property.
The court believes that the plaintiff's expert's opinion as to the value of the marital residence is conservative and that the defendant's expert's opinion is somewhat optimistic. From examining the evidence of the comparable sales used by both experts, and the testimony of the parties, the court finds the fair market value of the subject property to be Five Hundred Thousand ($500,000.00) dollars.
Absent an agreement of the parties, the listing price of the property shall be Five Hundred and Thirty-Five Thousand ($535,000.00) dollars. If the property does not sell within forty-five days of its listing, the situation shall be reviewed and the listing price shall be adjusted.
4. Until the residence is sold, the plaintiff shall have exclusive possession of the property. The plaintiff shall be solely responsible for the payment of the mortgage, taxes, insurance and utilities. The plaintiff shall indemnify and hold the defendant harmless from any and all liabilities relating thereto.
The plaintiff's award of exclusive possession is contingent upon her making the payments stated above and upon her cooperating in the attempt to sell the residence. The court reserves jurisdiction to make other arrangements as to possession, pending sale, in the event the plaintiff fails to make the required payments or fails to cooperate in the sale.
At the time of sale, the plaintiff shall be reimbursed by the defendant for forty percent (40%) of the mortgage principal reduction from the principal balance as of June 1, 1995.
5. The defendant is awarded his pension from the New York Times. The defendant shall continue to maintain the plaintiff as the 100% irrevocable beneficiary of the pension. The defendant shall authorize the release of all information to the plaintiff regarding said pension.
6. The defendant shall transfer the lease to the Acura automobile to the plaintiff subject to the balance of the lease payments, and the plaintiff shall indemnify and hold the defendant harmless for any and all liability relating thereto. CT Page 4791
7. The defendant is awarded the remaining balance in the Dean Witter account.
8. The plaintiff shall be solely responsible for the debts to James Ulrich and Connecticut Carting and the 1994 loans from her mother in the amount of $17,000.00.
The defendant shall be solely responsible for the payment of the debts to his aunt, Mildred Benson, the accountant, Bill Turnof, and for his individual Chase credit card, with a current balance of $3,600.00.
9. The defendant is awarded his 1992 Ford automobile, his individual Republic National Bank and People's Bank accounts, and his Patterson Country Club membership and bond.
10. The plaintiff shall relinquish to the defendant his Patek Phillippe watch which was gift from the plaintiff's father.
11. The defendant shall be provided access to the marital home in the presence of a third party within 14 days of the date of this memorandum for the purpose of creating a list of furniture and personal property. Thereafter, the parties are referred to the Family Relations Office at the Superior Court in Stamford to assist them in dividing their personal property. If the parties fail to agree, the Family Relations Office shall submit a report and recommendation. The parties, through counsel, shall advise the court if a further hearing is requested on this matter or if the court shall issue orders based on the report of the Family Relations Office and the evidence presented during the trial.
12. Each party shall pay her and his own counsel fees.
13. The parties are going to receive a check in the approximate amount of Eighteen Hundred dollars ($1,800.00) from their home owners insurance carrier for storm damage to a fence and pond on their property. The parties disagree as to whether the actual costs of repairs will equal the amount of the insurance check.
The entire proceeds of the insurance check shall be paid over to the plaintiff, and the necessary repairs shall be made. If there are any funds remaining after the repairs are completed, the plaintiff shall use said funds to improve the property to make it more attractive to prospective buyers. CT Page 4792
14. The plaintiff's former name of Heloisa Marie Gaio DeCastro is ordered restored.
Judgment may enter accordingly.
NOVACK, J.